IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                                  )<br>                  v.                          )<br>                                                  )<br>VICTOR BLASSINGAME        )<br>_____) | Cr. No. 05-339 (JDB) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Mr. Victor Blassingame, through his counsel, Rita Bosworth, Assistant Federal Public Defender, hereby respectfully submits this memorandum in aid of sentencing, and the exhibits attached hereto, pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Blassingame respectfully submits that he should be sentenced to a period of incarceration of time served followed by a period of supervised release of three years, twelve months of which should be served in community confinement.

**BACKGROUND**

On September 13, 2005, the government filed a one-count indictment against Mr. Blassingame, charging him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). The criminal conduct charged in the indictment occurred on August 15, 2005. After his arrest, Mr. Blassingame was detained for three days. At a detention hearing on August 19, 2005, Mr. Blassingame was released to a halfway house on work release. On

February 9, 2006, a jury found Mr. Blassingame guilty of the charged conduct. After the verdict was announced, this Court allowed Mr. Blassingame to remain on work release pending his sentencing. Since that time, Mr. Blassingame has been in full compliance with his conditions of release. Mr. Blassingame is scheduled to be sentenced on April 24, 2006.

## DISCUSSION

**I.    THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 543 U.S. 220, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional

treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. BLASSINGAME SHOULD RECEIVE A SENTENCE OF INCARCERATION OF TIME SERVED FOLLOWED BY THREE YEARS OF SUPERVISED RELEASE, TWELVE MONTHS OF WHICH SHOULD BE IN COMMUNITY CONFINEMENT

    A. Statutory Provisions

Pursuant to the applicable statutes, there is no minimum term of imprisonment, and the maximum term of imprisonment is ten years for this Class C felony. 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

    B. Advisory Sentencing Guidelines

    *(I)*     *Applicable Guideline Range*

The Probation Office, using the 2005 Edition of the United States Sentencing Guidelines has concluded that the Base Offense Level in this case is 14 and that Mr. Blassingame's criminal history category is II, resulting in an advisory Guideline range of 18 to 24 months.

    *(II)*     *Mr. Blassingame Should Receive a Downward Departure Based on Post-Offense Rehabilitation Efforts.*

The Court should grant Mr. Blassingame a downward departure from his advisory Guideline range of 18-24 months in light of his extraordinary post-offense rehabilitation efforts.

In approaching departure requests, sentencing courts that identify features of a case that "potentially...take it outside the Guidelines' "heartland" and make of it a special, or unusual, case" must determine whether the Sentencing Commission "has forbidden departures based on those features." Koon v. United States, 518 U.S. 81, 95 (1996) (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993.)).

In the case at hand, the departure requested has clearly not been forbidden. While the

Sentencing Commission has determined that *post-sentencing* rehabilitative efforts should not provide a basis for downward departures when *re-sentencing* defendants initially sentenced to a term of imprisonment, departures based on *post-offense* rehabilitative efforts prior to sentencing "have been allowed by every circuit that has ruled on the matter post-Koon." U.S.S.G. Manual, Appendix C, amendment 602.

With respect to Mr. Blassingame, several factors combine to make his an extraordinary case. Mr. Blassingame has spent the last eight months in a halfway house, away from the wife and children whom he loves. Despite the emotional difficulty this living situation presents, Mr. Blassingame has been in compliance with all of his conditions. He has also been able to maintain his employment throughout his entire tenure at the halfway house. In fact, he has gone above and beyond merely "maintaining" a job, the Court can see from the attached letter from his employer that Mr. Blassingame has been a reliable and dependable employee at the construction company where he works. It takes a strong will and solid character to continue working despite the disruption in living conditions, and Mr. Blassingame has demonstrated both those qualities.

Perhaps the strongest evidence of Mr. Blassingame's commitment to rehabilitation is the fact that despite his problems with drug use in the past, he has consistently tested negative for drugs at the halfway house. While Mr. Blassingame admits that he has a problem with drugs, he also maintains his request to get treatment so that he can leave that part of his life in the past and move forward. Again, it takes someone with significant character to admit that he has as drug problem and ask for help. All these factors are a testament to Mr. Blassingame's willingness and desire to lead a law abiding, peaceable life, and these past eight months serve as undisputed evidence that he, unlike so many others, is capable of doing just that.

    C.  Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a), sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

    *I. Nature of the Offense*

While Mr. Blassingame in no way wishes to diminish the seriousness of the offense, he notes that possession of a gun is not a violent crime, nor was anybody hurt as a result of his conduct.  To the contrary, Mr. Blassingame was attempting to *help* his friend Harvey Martin by driving him home on the night of the arrest because he was afraid that Mr. Martin was too drunk to drive himself.  As the Court can see from the letter written by Mr. Martin [Exhibit 1], Mr. Blassingame had only the best of intentions that night, and he certainly did not set out to harm anyone.

*II. Characteristics of the Defendant*

As outlined in the PSR, Mr. Blassingame has a strong family support system and grew up in a stable home environment, which contributed to his ability to be the loving husband and father of three that he is today.  He has also been gainfully employed for his entire life, having worked for the same Construction company full time since 2000 and part time from 1994 to 1998.  The Court can see from the letter submitted by Mr. Blassingame's employer [Exhibit 2] that he is a hard worker and extremely reliable.  While Mr. Blassingame has sustained some drug use in his past, he has made diligent efforts to become clean and welcomes any help he can get with respect to any drug addictions he has.  In short, Mr. Blassingame is a man who has a past peppered with mistakes but who is graced with a strong and generous heart, and he truly does wish to be a productive, peaceful member of his community.  His desire to be a law-abiding citizen is demonstrated by the fact that he has been living in a halfway house since his detention hearing back in August of 2005, and there have been no problems with this arrangement because he has complied with all his conditions of release and all the rules of the halfway house.  Mr. Blassingame is the perfect example of someone who has demonstrated his ability to live in the community and abide by its rules, and who therefore does not need to be incarcerated.

*III.  Needs of the Community and Public*

In light of the choices Mr. Blassingame has made, and due to the way he has led his life over the past eight months, a period of incarceration is simply not necessary to protect the public in this case.  Indeed, a period of incarceration at this juncture would harm, rather than help, the community. As demonstrated clearly in the letters attached to this memorandum, Mr. Blassingame's absence, were he to be sentenced to a term of incarceration, would be felt deeply

across his community. His wife and children would miss the husband and father who they love and who loves and supports them, emotionally and financially. His employer would lose a dependable, reliable employee. His friends would be deprived of someone who puts the needs of others ahead of his own. And the community would be paying to incarcerate someone who has proven that he can be a productive and law abiding citizen.

*IV. Sentencing Mr. Blassingame to a Sentence of Incarceration would be Unduly Punitive*

Clearly, imposition of a sentence of imprisonment in the instant case would serve no purpose other than punishment, and a punishment of incarceration is strongly disproportionate to the offense in this case. This was not a violent crime, nobody was hurt, and even the star government witness submits that the only reason Mr. Blassingame was out that night was to protect his friend from harm. There was no malicious intent or thoughts of ill will. Mr. Blassingame has proven that he can maintain a job, support his family, and exist peaceably in society without being incarcerated. A sanction less extreme than incarceration is therefore warranted to avoid a disproportionate punishment.

*V. The Court has Evidence that Mr. Blassingame would be a Perfect Candidate for Supervision*

Should the Court sentence Mr. Blassingame to time served and a period of supervision, it could rest assured that he would comply with the requisite conditions. Mr. Blassingame has complied fully with his pre-trial conditions since he first appeared in this Court, and he has also maintained his full time job throughout his time at the halfway house. Rarely does a court have this much evidence concerning the likelihood of success of a particular defendant.

**CONCLUSION**

      For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Blassingame asks the Court to sentence him to a period of incarceration of time served to be followed by three years of supervised release, twelve months of which should be served in community confinement. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

      Respectfully submitted,

      A.J. Kramer
      Federal Public Defender


      _____/s/_____
      Rita Bosworth
      Assistant Federal Public Defender
      625 Indiana Avenue, N.W.
      Washington, D.C. 20004
      (202) 208-7500 ex.105